Kirkpatrick, C. J.
— I think this record is erroneous in many respects. In order to ground a proceeding of forcible entry and detainer, the act requires that the party shall make a complaint in writing, specifying the lands, tenements, or other possessions so forcibly entered upon and detained, by whom, and when done, and the estate therein.
The complaint filed in this case, is, that the defendants ‘■'entered into and upon lands of the complainant, lying and being in the river Delaware, which said lands are covered with water, and there, forcibly and with strong hand, entered upon a certain ware or fishery, which belonged to and was in possession of the said complainant, to which she had title under certain commissioners,” &c.
From these words, it seems to be uncertain whether the forcible entry and detainer complained of, are of the land, or of the fishery, or of the ware. If of the lands, or fishery, then the complaint is insufficient, not [*] specifying the estate therein which the complainant had, as the act directs; if, of the ware, which is mere personal property, then the ground of complaint itself fails; it is a subject matter for the forcible entering upon ami detaining of which, this kind of prosecution will not lie. It was so at common law, it was so under the English statutes formerly in force here, it is so under our own statute.
If it should be thought that the commissioner’s license in any way affects the case, it is to be observed,
The river Delaware is a navigable river, free for the passage and re-passage of all the citizens of this State. This right of navigation is paramount to all other rights. The right of fishing, therefore, could only he exercised and enjoyed, subject to the paramount right of navigation, and where they interfered, the right of fishing must yield. The legislature, in order to prevent any disturbance or controversy in the exercise of these two lights, have thought proper to appoint commissioners to inspect the river, and to determine in what places wares, &c., may be erected without injury to the free passage, and to grant licenses accordingly; and they have strictly inhibited the erecting of such wares, without such license, under certain penalties. Now, it is manifest, in this view of the subject, that the legislature, in this, only restrain and modify a right which existed before; these commissioners convey no estate, no new right, they only determine where and by whom, that which pre-existed, *80 may be enjoyed and used consistently with the public interest, with the free navigation of the river.
The complainant, therefore, in order to lay a foundation for this prosecution, ought to have set forth her estate in the land and fishery, as the act requires, and not to have referred merely to the license; for that gives no estate. How essential this part of the complaint is, for the attainment of justice, it is not necessary to state. It is enough, that the legislature have required it. — Let the judgment be reversed.
[*] Rosseix, J. — Concurred.
Pennington; J.
— I concur in the reversal of this judgment. The act of Assembly hath not been pursued, in as much as the estate of the plaintiff in the lands and tenements forcibly entered upon, was not specified in the complaint exhibited'to the justice. The license given by the commissioners, does not create, limit, or any way affect the estate of the plaintiff in the land. The act of Assembly, giving authority to the commissioners to grant licenses to erect wares or fishing dams, cannot be considered in any other light than a public regulation, pointing out the manner in which an individual himself, or by his consent, another person may use his property in the soil or bed of the river Delaware, above the ebb and flow of the tide, without injury to the general use of the river as a public highway.
The judgment for costs, which are very considerable, is also entered in figures; and, therefore, according to the •case of Colo v. Petty,(a) reversable for that cause also.
By the Court. — Let judgment be reversed.
Pennington, J.
— Observed to the bar, that he perceived in this case, that the costs were literally trebled; the common costs being $20, the justice had rendered judgment for sixty dollars; and asked them if they considered this manner of trebling costs as the rule in this State — or whether the English practice was usually pursued? Leake Sergeant said, he saw no reason why the English rule, as laid down in Tid’s practice, should not be observed here. Doubts of the correctness of applying the English practice in this respect, to cases arising under our acts of Assembly, were entertained by other gentlemen.
The rule laid down in Tid is this: Where á statute gives double costs, they are to be calculated thus: [*] 1. The *81 common costs; and then half the common costs. If treble costs: — 1. The common costs; 2, half of these; and then half of the latter: Tid’s Prac. 363, edition of 1796. If this rule is to be followed, the costs in the above cause would have been thirty-five dollars, in lieu of sixty dollars, for which, judgment was rendered; but the court gave no opinion on the point; the judgment being reversed for another cause.(a)
The Chief Justice observed, that a notion was prevailing, that double or treble costs went to the officers, jurors, &c. This he said was a mistaken notion. These additional costs were given to the party to compensate him for the unjust and undue vexation which he hath been put to.

 Ante. *60. — Ed .

 Vid. Crane v. Dod and Wife. 2 South, 517, 818.-Ed.